Vincent DeSCIOSE, Jr., Appellant
(Plaintiff below),

v.

Louis A. DOMENICO, Appellee
(Defendant below).

No. 3657.

Supreme Court of Wyoming.

June 6, 1968.

A. G. McClintock of McClintock, Mai &
Urbigkit, Cheyenne, for appellant.

Carl L. Lathrop of Lathrop, Lathrop &
Uchner, Cheyenne, for appellee.

Before HARNSBERGER, C. J., and
GRAY, McINTYRE, and PARKER, JJ.

Mr. Chief Justice HARNSBERGER de-
livered the opinion of the court.

The parties to this appeal had been part-
ners conducting operations in Omaha, Ne-
braska, and Cheyenne, Wyoming. In a
Nebraska proceeding for dissolution a re-
ceiver was appointed and an order entered
dividing partnership assets. While an ap-
peal from this order was pending, the at-
torney for the partnership prepared a final
settlement agreement which provided that
Domenico was to receive the partnership
properties at Cheyenne; DeSciose was to
receive the Omaha properties, each party
assuming all obligations incident to the
businesses respectively received; the Ne-
braska dissolution proceeding was to be
dismissed; and Domenico was to pay De-
Sciose $12,800.

DeSciose refused to sign this agreement
because he did not agree with the findings
made by the partnership's auditors that
there was a partnership liability to the

United States in the sum of $13,563.02, for fuel siphoned from government planes.

Domenico placed with the attorney a $13,563.02 check, payable to the United States. The attorney showed this to De-Sciose and stated it would be delivered to its payee when the receiver was discharged, the Nebraska dissolution proceeding dismissed, and mutual exchanges of assignments and releases had been given. DeSciose then executed the agreement.

The receiver was discharged, the Nebraska dissolution proceeding dismissed; assignments, releases, et cetera, exchanged; and Domenico paid DeSciose $12,800 which was received in full settlement and dissolution of the partnership. The attorney, however, did not deliver the check to the United States, and DeSciose brought his action against Domenico to recover $6,781.51 as one-half of $13,563.02, together with interest thereon. On trial to the court, judgment was rendered in Domenico's favor, and DeSciose appeals.

There is absent from the record any evidence that the parties, DeSciose and Domenico, ever made an agreement or contract, express or implied, which required Domenico to deposit the $13,563.02 check with the attorney or which directed or prescribed upon what terms or conditions or under what circumstances or to whom the attorney was authorized to deliver, dispose of, or use the check. There was never any meeting of the minds of the parties with respect to what was to be done with the check. In fact, the testimonies of De-Sciose and Domenico regarding the matter were in direct conflict and entirely irreconcilable. In this circumstance we must of course accept as true Domenico's statement that he "agreed to give Mr. Lathrop [the attorney] a check to hold in the event that the United States Government upon their audit demanded payment of the liability so that Mr. DeSciose wouldn't be held responsible for one-half of that liability or all of it in the event that I [Domenico] couldn't meet any of it," and that Domenico delivered the check to the attorney instructing

him, "if the liability becomes a real one and had to be paid that he was to contact Mr. Hoffman [Domenico's banker] who would contact me [Domenico], and I would sign a note for it," and Domenico denied he ever stated to the attorney or to DeSciose that the check was to be delivered "prior to the time that the United States determined what it thought the liability should be."

We do not overlook the undisputed evidence that the attorney for both parties who drew the agreement, both by telephone and letter, represented to DeSciose that he had in his possession the check of Sky Harbor Air Service signed by Domenico "in the sum of $13,563.02, payable to the United States of America, to cover that liability that was listed on the recent statement for gas siphoned off of U. S. Planes," and that the attorney stated to DeSciose that "This check is to be delivered upon the discharge of the Receiver in the litigation pending in Omaha." Also, we do not doubt that it was in reliance upon the representation by the attorney that DeSciose signed the agreement. However, the only agreement made contains no mention of the $13,563.02 check, and there is absent from the record any evidence that Domenico gave the attorney any express, apparent, or ostensible authority to make such a representation or any commitments whatsoever in order to induce or bring about DeSciose's execution of the agreement.

■ Although the check's deposit with the attorney has been referred to by counsel as an escrow, it did not become so under the requisites for escrow referred to in 30A C.J.S. Escrows § 2, pp. 968–969, as there is lacking the required agreement for its creation. See authorities cited therein under notes 6, 7, 7.5, 7.10, and 8. Also see 28 Am.Jr.2d Escrow § 4, pp. 7–8, and notes 18 and 19, with authorities cited.

■ We realize there are courts which have recognized a class of circumstances considered as escrows where no contract exists, and it may be the situation here is

reasonably within that category. See 30A C.J.S. Escrows § 4b, pp. 973–974, notes 52 and 53; and 28 Am.Jr.2d Escrow § 4, p. 9, note 7. But we think it is immaterial here whether Domenico's deposit of the check with the attorney was an escrow, a trust, a pledge, a conditional delivery, an agency, or any kind of fiduciary relationship. The crux of this dispute lies in the conditions attached to Domenico's placement of the check in the hands of the lawyer. Under our appellate rule, this admits of but one conclusion. The limit of the authority of the attorney was merely to deliver the check to its payee only when and if "the United States Government upon their audit demanded payment of the liability."

Under the evidence exhibited by the record, it appears the judgment of the court was justified and the same must be affirmed.

Affirmed.

PARKER, J., concurs in the result.

McINTYRE, Justice (dissenting).

Unfortunately, as I view it, my colleagues are seeing only one side of the coin in this case (from the standpoint of Louis A. Domenico) and failing to look at the other side (from the standpoint of Vincent DeSciose, Jr.).

Their opinion states there is absent from the record any evidence that the parties ever made an agreement or contract which required Domenico to deposit the $13,563.-02 check with the attorney or which directed or prescribed upon what terms or conditions or under what circumstances or to whom the attorney was authorized to deliver, dispose of or use the check.

This conclusion overlooks the fact that either there was an agreement requiring deposit of the check, with directions as to its delivery and use by the attorney, or there was no settlement agreement at all between the parties.

What I say is borne out conclusively by the letter of the attorney, Carleton A. Lathrop. The terms set forth in the letter have not been altered by extrinsic evidence, and I doubt that they could be under the parol evidence rule. Let us look at the letter, which in pertinent part states:

"In accordance with our telephone conversation, I am enclosing herewith two copies of a form of agreement which we have prepared in an effort to settle all litigation and other accounts between you and Lou, as given to me when you were both in my office last Saturday.

"As I told you, I have in my possession a check of Sky Harbor Air Service, signed by Lou, in the sum of $13,563.02, payable to the United States of America, to cover that liability that was listed on the recent statement for gas siphoned off of U. S. Planes. This check is to be delivered upon the discharge of the Receiver in the litigation pending in Omaha.

"If the enclosed Agreement meets with your approval you should sign both copies and return same to me. I will immediately have Lou sign both copies and return one to you for your file and give the other to Lou for his file. * * *"

Regardless of what understandings Domenico may or may not have had regarding the $13,563.02 check which he actually did leave with Lathrop, if we look at DeSciose's side of the coin, it is definite that he executed and carried out his part of the settlement stipulation with the understanding that the check was to be handled exactly as outlined by Lathrop in his letter. If Domenico thought it was to be dealt with otherwise, then there never was a meeting of minds on the settlement.

In Lefforge v. Rogers, Wyo., 419 P.2d 625, 627, we recognized that the rule excluding parol evidence to vary or contradict a writing (such as the settlement stipulation in the present case) does not extend so far as to preclude a valid prior or contemporaneous collateral parol agreement between the parties, *which is separate and distinct from, and independent of, the written instrument.*

It would be hard to believe this court would impose upon DeSciose the burden of trying to prove what was in Domenico's mind, or what his understanding may have been when he executed the settlement stipulation and turned over to Lathrop his check for $13,563.02. DeSciose proved conclusively and without contradiction what was in his own mind and what his understanding was. In fact, the letter speaks for itself.

This brings me to the inescapable conclusion that Domenico either had the same understanding about the check and its use as DeSciose had, or there was no meeting of the minds on the settlement itself. Obviously, the check was turned over to Lathrop as a result of what was intended to be a separate and distinct agreement. If there was not a meeting of minds on this separate understanding and agreement, then the consideration for the settlement stipulation failed and there was no meeting of the minds on the settlement.

The trial court, in my opinion, if it found Domenico delivered the check to Lathrop with a different understanding from what Lathrop had written to De-Sciose, should have declared the entire settlement between the parties null and void. After which it should have adjusted equities between the parties as best it could.